**Alfredo VASQUEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–97–00329–CR.**

Court of Appeals of Texas, San Antonio.

May 19, 1999.

Rehearing Overruled July 1 and Sept. 3, 1999.

Lisa M. Beck, Beck & Beck, San Antonio, for appellant.

Edward F. Shaughnessy, III, Asst. Criminal Dist. Atty., San Antonio, for appellee.

Sitting: TOM RICKHOFF, Justice PAUL W. GREEN, Justice KAREN ANGELINI, Justice.

## OPINION

Opinion by: KAREN ANGELINI, Justice.

### Nature of the Case

A jury found Alfredo Vasquez guilty of the offense of murder and assessed punishment at forty years confinement in the Institutional Division of the Texas Department of Criminal Justice. In his first issue, Vasquez alleges that the evidence is legally and factually insufficient to support the verdict. In his second issue, Vasquez contends that he received ineffective assistance of counsel. In his third issue, Vasquez argues that section 19.02(d) of the Penal Code violates his right to due process. In his fourth issue, Vasquez contends that the trial court erred by failing to give a jury instruction on an alternative definition of self-defense.

### Factual Background

Shortly after midnight, Vasquez went to the home of the deceased, Annabelle Villarreal, to visit Annabelle's sister. Although Annabelle's sister was not at home, Vasquez decided to drink some beer with Villarreal. After finishing all of the beer, Vasquez and Villarreal decided to go to an ice house to drink more beer. The two left in Vasquez's car and drove to the ice house. After leaving the ice house, Vasquez began driving Villarreal home. According to Vasquez, he pulled over to the side of the road at Villarreal's request. Villarreal then got out of the car and called to Vasquez to join her. Vasquez got out of the car and approached Villarreal who had her back turned to him. When Vasquez got close to Villarreal, she turned around and swung at him with a knife. Vasquez testified that he began backing up and tried to punch her. Fearing for his life, Vasquez used his own knife to attack Villarreal. Vasquez later told the police that he remembered cutting her neck first. After the attack, Vasquez moved Villarreal's body to the side of the road. Vasquez left his car at the scene and walked about half a mile to a convenience store where he

called the police and told them that he had been in a fight with a female. The police responded to the call and found Vasquez walking down the road with blood on his clothes. The police officers placed him under arrest.

According to the medical examiner, Villarreal was a victim of homicide who died as the result of multiple stab wounds. The medical examiner further testified that Villarreal suffered a total of fifty-two stab wounds, including wounds to the face, neck, back, chest and abdomen and "defensive" wounds on her hands and arms.

## Self–Defense

 In his first issue, Vasquez contends that the evidence was legally and factually insufficient to support the jury's finding of murder and rejection of self-defense. The jury was instructed that if they found that Vasquez acted in self-defense or they had a reasonable doubt on the issue, they must acquit. Because the jury found Vasquez guilty, there was an implied finding that he did not act in self-defense. *See Saxton v. State*, 804 S.W.2d 910, 914 (Tex.Crim.App.1991). A person is justified in using deadly force when: (1) self-defense is justified under section 9.31; (2) a reasonable person in the defendant's situation would not have retreated; and (3) the use of deadly force was reasonably believed to be immediately necessary to protect the defendant against another's use or attempted use of unlawful deadly force. TEX. PEN.CODE ANN. § 9.32(a) (Vernon Supp.1999).[1] The State has the burden of persuasion to disprove self-defense but not a burden of production which means that the State must prove its case beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 913. Because the issue of self-defense is an issue of fact for the jury to decide, the credibility of the self-defense evidence is solely within the jury's prov-

ince and the jury is free to accept or reject the evidence. *Id.* at 914.

 In determining the legal sufficiency of the evidence, we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of murder beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt. *Id.*

The medical examiner testified that the autopsy revealed that Villarreal suffered fifty-two stab wounds to the head, face, neck, chest, abdomen and back and "defensive" wounds on her hands and arms. Based on this evidence, the jury could have found that the force used was not reasonably necessary to protect against Villarreal's use or attempted use of force. The medical examiner's testimony, that nineteen of the stab wounds were inflicted on Villarreal's back, tends to show that deadly force was not immediately necessary to protect against the use of deadly force. Furthermore, because the evidence shows that Vasquez had access to his vehicle, a jury could have found that a reasonable person in Vasquez's situation would have attempted to retreat. Although Vasquez testified that Villarreal swung at him with a knife, the police did not recover Villarreal's knife at the scene.

After viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of murder beyond a reasonable doubt and would also have found against Vasquez on the self-defense issue beyond a reasonable doubt. *Id.* Therefore, we find the evidence legally sufficient to support the implied finding

---

**1.** Section 9.31 states that a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of lawful force. TEX. PEN.CODE ANN. § 9.31(a) (Vernon 1994).

that Vasquez did not stab Villarreal in self-defense.

When presented with a factual sufficiency claim, we review all the evidence in the record which is probative of self-defense to decide if the finding of guilt and finding against self-defense are so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Reaves v. State,* 970 S.W.2d 111, 116 (Tex.App.—Dallas 1998, no pet.) (combining standards set out in *Clewis v. State,* 922 S.W.2d 126, 134 (Tex.Crim.App.1996) and *Saxton v. State* to review the factual sufficiency of a self-defense issue).

Viewing the evidence probative of self-defense, Vasquez testified that Villarreal swung at him with a knife and that he backed up to avoid being cut. In an attempt to stop the attack, Vasquez testified that he tried to grab her knife and cut his pinky finger. Vasquez further testified that he tried to punch Villarreal in order to disarm her and that he pleaded with her to stop. Believing that he was going to die, Vasquez testified that he pulled his knife out of his pocket and "attacked her back." In a further attempt to show that Vasquez acted in self-defense, Vasquez points to testimony that Villarreal had a bad temper and had been arrested for stabbing a man. Vasquez also urges that he had no motive to kill Villarreal and that his prompt reporting of the attack furthers his self-defense claim. During his testimony, however, Vasquez was unable to recall how many times he stabbed Villarreal and he admitted that he was intoxicated.

Although Vasquez testified to facts tending to support self-defense, the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Santellan v. State,* 939 S.W.2d 155, 164 (Tex.Crim.App.1997). We must give due deference to the jury on these issues. *Id.* at 166. Viewing all the evidence probative of self-defense, the jury's rejection of the self-defense claim was not "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Clewis,* 922 S.W.2d at 134. Therefore, we find the evidence factually sufficient to support the jury's implied finding that Vasquez did not stab Villarreal in self-defense. We overrule Vasquez's first issue.

### Ineffective Assistance

In his second issue, Vasquez contends that he received ineffective assistance of counsel during the course of the trial. The right to assistance of counsel also includes the right to reasonably effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In assessing the effectiveness of counsel, we apply the two-part test set forth by the Supreme Court in *Strickland v. Washington.* The test requires us to determine whether: (1) counsel's performance was deficient; and if so, (2) whether there is a reasonable probability that results would have been different but for counsel's deficient performance. *Id.* The appellant must overcome the presumption that his trial counsel's conduct might be considered to be sound trial strategy. *Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App.1994). Claims of ineffective assistance of counsel must be affirmatively demonstrated in the record. *See McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App.1996), *cert. denied,* 519 U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997). Further, we strongly presume that counsel's conduct lies within the "wide range of reasonable representation" and we examine the totality of the representation to determine the effectiveness of counsel. *Id.*

In his first instance of alleged ineffectiveness, Vasquez argues that his counsel should have objected to the admission of gruesome photographs of the victim's body based on Rule 403. Rule 403 provides: "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of

undue delay, or needless presentation of cumulative evidence." *See* TEX.R. EVID. 403. Vasquez contends that the probative value of the photographs was outweighed by the danger of unfair prejudice because the photographs shed no light on the issue of self-defense and, therefore, were intended to inflame the jurors and appeal to their emotions.

 Photographs provide powerful visual evidence of the offense and the trial court does not abuse its discretion by admitting photographs of the victim into evidence merely because they are gruesome. *See Sonnier v. State*, 913 S.W.2d 511, 519 (Tex.Crim.App.1995). In determining whether the probative value of the photographs is outweighed by its inflammatory nature, we consider factors such as: the number of exhibits offered, their gruesomeness, detail, size, and color, whether they are close-up, whether the body is naked or clothed, the availability of other means of proof, and the unique circumstances of the individual case. *See Santellan*, 939 S.W.2d at 172.

In reviewing the factors, we find that the State introduced two photographs of the body at the crime scene and five autopsy photographs. The crime scene photographs are roughly the size of a piece of paper and show the position of the body and a closer view of the victim's leg. The autopsy photographs are small and provide a close view of some of Villarreal's wounds. The photographs depict nothing more than the crime committed. *See Sonnier*, 913 S.W.2d at 519. Based on the number of photographs and their detail and size, the probative value was not outweighed by the danger of unfair prejudice. Therefore, the court did not abuse its discretion in admitting the photographs. Thus, counsel was not ineffective for failing to object based on Rule 403.

 In his second instance of alleged ineffectiveness, Vasquez asserts that defense counsel failed to object to the prosecutor's "inflammatory" jury argument. As examples of inflammatory jury argument, Vasquez points to the prosecutor's argument that Vasquez "butchered" Villarreal, used her as a "pin cushion," and made repeated references to the fifty-two stab wounds. Permissible jury argument falls into the following categories: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to the argument of opposing counsel; and (4) a plea for law enforcement. *Borjan v. State*, 787 S.W.2d 53, 55 (Tex.Crim.App. 1990). Any argument made outside of these areas will not constitute reversal unless the argument is manifestly improper, violates a mandatory statute, or injects new and harmful facts into the trial proceedings. *Id.*

Due to the violent nature of the offense and the numerous stab wounds, the prosecutor's comment that Vasquez had "butchered" Villarreal and used her as a "pin cushion" was a reasonable deduction from the evidence and references to the fifty-two stab wounds merely summarized the evidence. *See Burns v. State*, 556 S.W.2d 270, 285 (Tex.Crim.App.1977) (finding references to defendant as an "animal" and a "killer" reasonable deductions from the evidence); *White v. State*, 699 S.W.2d 607, 615 (Tex.App.—Dallas 1985, pet. ref'd) (finding comment that defendant "butchered" the victim a reasonable deduction from the evidence). Because the prosecutor's argument was not improper, counsel did not err in failing to object to the argument.

 In his third instance of alleged ineffectiveness, Vasquez contends that his counsel was deficient because he failed to present persuasive evidence of Villarreal's prior acts of violence. Vasquez argues that, although Villarreal's mother testified to Villarreal's violent past and the fact that she stabbed a man, his counsel should have offered evidence of Villarreal's arrest record and elicited the testimony of Trinidad Velasquez, the man Villarreal had stabbed. Additionally, Vasquez alleges that some evidence exists that a witness in Florida

could have supported Vasquez's position. In order to show that counsel was ineffective for failure to call witnesses, the evidence must show that the witnesses were available and the defendant would benefit from their testimony. *See King v. State,* 649 S.W.2d 42, 44 (Tex.Crim.App.1983). Because the record contains no evidence of the availability of Velasquez or the Florida witness nor how Vasquez would benefit from their testimony, Vasquez has failed to show that his counsel was ineffective. Further, Vasquez has not overcome the presumption that his counsel's conduct might be considered to be sound trial strategy. *See Jackson,* 877 S.W.2d at 771. Eliciting unfavorable testimony from Villarreal's own mother might be more compelling than testimony from another source and repeated testimony concerning Villarreal's violent past could have the effect of putting the victim on trial. For the foregoing reasons, we find that Vasquez did not receive ineffective assistance of counsel. We overrule Vasquez's second issue.

### Constitutionality of Section 19.02(d)

■ In his third issue, Vasquez asserts that section 19.02(d) of the Penal Code violates his right to due process of law by relieving the state of its burden of proving beyond a reasonable doubt the *mens rea* element of the crime and improperly shifting to the defense the burden of disproving the culpable mental state. Section 19.02(d) provides that, during the punishment phase, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. Tex. Pen.Code Ann. § 19.02(d) (Vernon 1994).[2] If the defendant proves sudden passion by a preponderance of the evidence, the first degree felony offense of

murder is lowered to a second degree felony. *Id.* Although the jury was charged with sudden passion, they did not find that Vasquez acted under the immediate influence of sudden passion arising from an adequate cause. On appeal, Vasquez alleges that section 19.02(d) violates his constitutional right to due process by shifting the burden of proof to the defendant.

We are not without guidance on the constitutionality of section 19.02(d) as numerous courts of appeals have upheld the constitutionality of the statute. *See Green v. State,* 971 S.W.2d 639, 643(Tex.App.— Houston [14th Dist.]1998, pet. ref'd); *Fleming v. State,* 956 S.W.2d 620, 622 (Tex.App.—Eastland 1997, pet. ref'd); *Jones v. State,* 955 S.W.2d 438, 440 (Tex. App.—Fort Worth 1997, pet. ref'd); *Robinson v. State,* 945 S.W.2d 336, 342 (Tex. App.—Austin 1997, pet. ref'd). In determining the constitutionality of the statute, the various courts of appeals looked to the United States Supreme Court case of *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). In *Patterson,* the Court upheld the constitutionality of a New York murder statute similar to section 19.02(d). The New York statute provided as an affirmative defense, that the defendant acted under the influence of extreme emotional disturbance, which the defendant had to prove by a preponderance of the evidence. *Id.* at 200, 97 S.Ct. 2319. The Supreme Court found that the New York statute did not violate due process and observed that in common law the burden of proving affirmative defenses and justifications rested on the defendant. *Id.* at 202, 97 S.Ct. 2319. Further, as other courts of appeals have pointed out, the Court of Criminal Appeals invited the Legislature to amend the Penal Code to make sudden passion a punishment issue that the defendant must prove by a preponder-

**2.** In 1993, the Texas Legislature repealed the offense of voluntary manslaughter, in which the State had to prove that the defendant caused death under the immediate influence of sudden passion arising from an adequate cause, and added the language in 19.02(d)

requiring the defendant to prove sudden passion during the punishment phase to reduce murder to a second degree felony. *See* Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3613–14.

ance of the evidence. *See Johnson v. State*, 815 S.W.2d 707, 710 n. 3 (Tex.Crim. App.1991); *Bradley v. State*, 688 S.W.2d 847, 853 n. 13 (Tex.Crim.App.1985). Finding no distinction between the affirmative defense the defendant had the burden of proving in *Patterson* and section 19.02(d), Texas courts have found that section 19.02(d) does not violate the due process clause of the United States Constitution or the Texas Constitution. We agree with our sister courts and find that section 19.02(d) does not violate the due process clause. We overrule Vasquez's third issue.

### Jury Charge

In his fourth issue, Vasquez contends that the court erred by failing to charge the jury on an alternative definition of self-defense set forth in section 9.32(a)(3)(B) of the Penal Code.[3] The record shows that defense counsel did not request this instruction nor did he object to the omission of the alternative self-defense instruction when the court asked for any objections to the charge. Having failed to request or object to the omission of the alternative self-defense instruction, the court did not err by failing to include it in the jury charge. *See Posey v. State*, 966 S.W.2d 57, 62 (Tex.Crim.App.1998) (finding unrequested defensive instruction not "error"). We overrule Vasquez's fourth issue.

Accordingly, we affirm the judgment.

---

3. (a) A person is justified in using deadly force against another:
 (1) if he would be justified in using force against the other under Section 9.31;
 (2) if a reasonable person in the actor's situation would not have retreated; and
 (3) when and to the degree he reasonably believes the deadly force is immediately necessary:

 (A) to protect himself against the other's use or attempted use of unlawful deadly force; *or*
 (B) *to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.*
TEX. PEN.CODE ANN. § 9.32(a)(3)(B) (Vernon Supp.1999) (emphasis added).