Rodney Wayne **GREEN,** Appellant,

v.

The **STATE** of Texas, Appellee.

No. 14–96–00419–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

April 23, 1998.

Discretionary Review Refused
Sept. 23, 1998.

Lawrence T. Newman, Houston, for appellant.

Dan McCrory, Houston, for appellee.

Before YATES, EDELMAN and O'NEILL, JJ.

## OPINION

O'NEILL, Justice.

Appellant, Rodney Wayne Green, was charged by indictment with capital murder, and found guilty by a jury of the lesser included offense of murder. *See* TEX.PENAL CODE ANN. §§ 19.02, 19.03 (Vernon 1994). Punishment was assessed at ninety-nine years confinement in the Texas Department of Criminal Justice, Institutional Division. In three points of error, appellant contends the trial court erred in (1) denying his motion to suppress evidence obtained as the result of an unlawful search, (2) denying his motion to declare TEX.PENAL CODE ANN. § 19.02 unconstitutional, and (3) admitting improper extraneous offense evidence. We affirm.

## Background

Appellant and Darlene Green ("Darlene"), the complainant, were experiencing marital problems and decided to separate after sixteen years of marriage. On March 26, 1995, appellant moved all of his belongings to his mother's home where he had been staying. Darlene informed her sister, Priscilla Wilson ("Priscilla"), that she and appellant had separated and he had moved out. The next day, Darlene took steps to retain a lawyer and begin divorce proceedings. Priscilla spoke with her sister every day to make sure she was okay, and Darlene did not indicate that appellant was causing her any problems. However, on March 29, 1995, Darlene called Priscilla in a hysterical state and related that appellant had broken into her home and sexually assaulted her early that morning. Priscilla convinced her sister to stay at a friend's house the following night. The next morning, when Darlene and the couple's son, Brandon, stopped by the house to pick up Brandon's schoolwork, appellant was waiting for her. An altercation ensued, and Brandon witnessed appellant stab Darlene several times with a knife. Brandon attempted to call 911, but appellant stopped him. Appellant left with Brandon, and dropped him off at appellant's mother's house.

Priscilla became concerned for Darlene when she could not reach her at home, in her car or at work, and contacted the Harris County Sheriff's Department. Deputy T.J. Bohannon was dispatched to Darlene's residence for a "welfare check." Bohannon received no response when he knocked at the front and back doors of the house, and found no signs of forced entry. Priscilla arrived at the scene and informed Bohannon about the relationship between appellant and her sister. She told him a confrontation had occurred between appellant and Darlene the day before, and expressed her concern that something had happened. Bohannon and Priscilla questioned some of the neighbors, but no one had seen Darlene. When she determined that Darlene had still not reported to work, Priscilla instructed Bohannon to make a forced entry into the home. Bohannon removed a window pane, entered the home, and made his way to the master bedroom, where he discovered Darlene's body lying on the bathroom floor. Bohannon exited the residence and called for backup. Shortly thereafter, appellant was apprehended and confessed to killing his wife.

## Point of Error One

In his first point of error, ·appellant claims Bohannon's initial entry and search was illegal and therefore the trial court should have suppressed all evidence found within the residence. The State contends appellant has no standing to contest the legality of the search because he failed to prove that he had a reasonable expectation of privacy in the residence after he moved out. We agree.

■ An appellate court analyzing the denial of a motion to suppress should afford almost total deference to the trial court's determination of the historical facts supported by the record. *See Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997). The same amount of deference should be afforded the trial court's rulings on application of law to fact questions, referred to as mixed questions of law and fact, if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *See id.* However, mixed questions of law and fact may be reviewed *de novo* where the resolution of those ultimate questions is not restricted to an evaluation of credibility and demeanor. *See id.*

■ An accused may challenge the admission of evidence obtained by illegal government intrusion only if he had a legitimate expectation of privacy in the place invaded. *See Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex.Crim.App. 1996). Because the accused has greater access to the relevant evidence, it is his burden to prove facts establishing a legitimate expectation of privacy. *See Villarreal,* 935 S.W.2d at 138. To meet this burden, the accused must prove (1) his conduct exhibited an actual subjective expectation of privacy or a genuine intention to preserve something as private, and (2) circumstances existed under which society was prepared to recognize his subjective expectation as objectively reasonable. *See id.* (citing *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979); *Richardson v. State,* 865 S.W.2d 944, 948–49 (Tex.Crim.App.1993)). Factors relevant to this determination include the following:

(1) whether the accused had a property or possessory interest in the place invaded; (2) whether he was legitimately in the place invaded; . (3) whether he had complete dominion or control and the right to exclude others; (4) whether, before the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the place to some private use; and (6) whether his claim of privacy is consistent with historical notions of privacy.

*See Villarreal,* 935 S.W.2d at 138 (citing *Calloway v. State,* 743 S.W.2d 645, 650 (Tex. Crim.App.1988)).

■ The State claims appellant had abandoned the house at the time of the search and therefore had no reasonable expectation of privacy therein. Abandonment is primarily a question of intent, which may be inferred from words spoken, acts done, and other objective facts. In determining intent, the court should consider all relevant circumstances existing at the time of the alleged abandonment. "The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily ... relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." *Smith v. State,* 530 S.W.2d 827, 833 (Tex.Crim.App.1975) (citations omitted) (quoting *United States v. Colbert,* 474 F.2d 174, 176 (5th Cir.1973)).

The record reflects that appellant and Darlene separated on March 26, 1995. Priscilla testified that when Darlene came home that day, "[appellant] had taken everything out of their house that belonged to him and he was gone—totally gone; nothing in that house—." Appellant confirmed that he packed his "stuff" and moved to his mother's house that day. How appellant entered the home in the early morning hours of March 29th, when he sexually assaulted Darlene, was the subject of conflicting testimony. According to Priscilla's testimony, Darlene believed appellant entered the house with his own key, even though she "thought that he had given her all the keys when he left." However, appellant himself testified he did

not use a key to enter but rang the doorbell. Moreover, appellant required Darlene's assistance in deactivating the alarm.

We believe the evidence in the record indicates appellant abandoned the house prior to Deputy Bohannon's entry. Appellant was no longer living in the house, and there was no evidence that he had dominion or control over the residence or the right to exclude others. There was no evidence he intended to or did stay at the home after the separation, or that he took the normal precautions customarily taken by those seeking privacy. Although it was appellant's burden, no evidence was produced at the suppression hearing to prove that, based on the totality of the circumstances, appellant had an actual subjective expectation of privacy in the residence or that, even if he did, circumstances existed under which society would recognize his subjective expectation as objectively reasonable. *See Villarreal*, 935 S.W.2d at 138–39. We conclude that appellant failed to establish his standing to challenge the legality of the search. Consequently, we do not reach appellant's contentions regarding exigent circumstances or the validity of Priscilla's consent to the initial entry. Point of error one is overruled.

### Point of Error Two

In point of error two, appellant challenges the constitutionality of TEX.PENAL CODE ANN. § 19.02 (Vernon 1994). The present offense was committed after the effective date of amendments to the statute which abolished the offense of voluntary manslaughter and required a party convicted of murder to prove at the punishment phase that the offense was committed under the immediate influence of sudden passion arising from adequate cause. *See id.* § 19.02(d).[1] Under the 1974 penal code, the State had the burden of disproving sudden passion when the issue was raised. *See Nance v. State*, 807 S.W.2d 855, 860 (Tex.App.—Corpus

Christi 1991, pet. ref'd). Appellant claims the amended statute, by shifting the burden of showing sudden passion to the accused, violates the Due Process Clause of the United States Constitution.

The same challenge to the statute's constitutionality was made in *Robinson v. State*, 945 S.W.2d 336, 341–42 (Tex.App.—Austin 1997, pet. filed), and was rejected. There, the court relied upon *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), wherein the United States Supreme Court upheld the constitutionality of a New York murder statute similar to section 19.02. The New York statute provided for an affirmative defense where the defendant "acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse." *Patterson*, 432 U.S. at 198 n. 2, 97 S.Ct. 2319 n. 2. Like section 19.02(d), the New York statute required the defendant to prove his affirmative defense by a preponderance of the evidence. *See id.* at 200, 97 S.Ct. 2319. The Supreme Court held that the New York statute did not violate the Due Process Clause, and observed:

> [t]he mitigating circumstances of severe emotional disturbance is a considerably expanded version of the common-law defense of heat of passion on sudden provocation, and at common law the burden of proving the latter, as well as other affirmative defenses—indeed 'all ... circumstances of justification, excuse or alleviation rested on the defendant.'

*Id.* at 202, 97 S.Ct. 2319 (citations omitted).

In *Robinson*, the court "perceive[d] no distinguishing factor between the affirmative defense appellant is required to prove by a preponderance of the evidence in the instant cause and the affirmative defense the defendant had the burden of proving in *Patterson*," and noted *Patterson's* recognition that "at common law, the burden of proving common law circumstances of alleviation rested

---

1. Section 19.02 provides, in pertinent part, as follows:

    (b) A person commits an offense if he:

      (1) intentionally or knowingly causes the death of an individual;

    (d) At the punishment stage of a trial, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. If the defendant proves the issue in the affirmative by the preponderance of the evidence, the offense is a felony of the second degree.

TEX.PENAL CODE ANN § 19.02 (Vernon 1994).

on the defendant." *Robinson,* 945 S.W.2d at 341–42 (citing *Patterson,* 432 U.S. at 202, 97 S.Ct. 2319). The court concluded that "Section 19.02 of the Texas Penal Code, as amended in 1994, is not violative of the Due Process Clause of the United States Constitution." *Id.* at 342.

The conclusion reached in *Robinson* was anticipated by the Court of Criminal Appeals even before the statute was amended. For example, in *Bradley v. State,* 688 S.W.2d 847, 853 n. 13 (Tex.Crim.App.1985), the court stated:

> We invite the Legislature to examine the possibility of enacting amendatory legislation which would make sudden passion an issue of punishment in a prosecution under § 19.02, to be submitted to the jury where raised and requested at the punishment phase of the trial.

> Alternatively, it would be constitutionally permissible to modify § 19.02 to make it an affirmative defense to murder that a defendant acted under the immediate influence of sudden passion arising from an adequate cause, and to place the burden of proof on the defendant to establish such an influence by a preponderance of the evidence, pursuant to V.T.C.A. Penal Code, § 2.04(d).

In *Johnson v. State,* 815 S.W.2d 707, 710 n. 3 (Tex.Crim.App.1991), the court again noted:

> The Legislature could easily resolve this muddled relationship between murder and manslaughter by either making 'sudden passion' a mitigating issue to be considered in the punishment phase of a trial for murder or drafting it as an affirmative defense like that in *Patterson.*

We agree with *Robinson's* conclusion that the statute as amended is constitutional, and overrule appellant's point of error two.

### Point of Error Three

■ In his third point of error, appellant contends the trial court improperly allowed the admission of extraneous offense evidence in the form of testimony concerning appellant's sexual assault of Darlene the day before the murder. Evidence of an extraneous offense may be admitted if it has relevance apart from its tendency to prove the character of a person in order to show that he acted in conformity therewith. *See* TEX. R.CRIM.EVID. 404(b). Such evidence has relevance apart from character conformity when it tends to establish some elemental fact, such as identity or intent. *See Montgomery v. State,* 810 S.W.2d 372, 387–88 (Tex.Crim.App.1990); *Aitch v. State,* 879 S.W.2d 167, 174 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd). Although relevant, such evidence may be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice. This analysis is to be conducted by the trial judge in light of the unique facts and circumstances of each case, and will not be disturbed on appeal unless it is outside the zone of reasonable disagreement. *See Montgomery,* 810 S.W.2d at 391.

■ Whether or not appellant had offered evidence in mitigation at the time the extraneous offense was admitted, the State was required to show intent as an element of the charged offense. *See* TEX.PENAL CODE ANN. § 19.02(b)(1) (Vernon 1994). In a prosecution for murder, the State or the defendant may "offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense." TEX.CODE CRIM.PROC.ANN. art. 38.36 (Vernon Supp.1998). Testimony regarding appellant's sexual assault of Darlene the day before the murder clearly is probative of the previous relationship between appellant and the deceased and his state of mind at the time of the offense, and therefore is relevant apart from character conformity.[2]

■ Once evidence is determined to be relevant, it is admissible unless the unfair

---

**2.** The testimony relating Darlene's account of the sexual assault was not objectionable as hearsay because it was not offered for the truth of the matter asserted but to show appellant's state of mind at the time of the offense. *See* TEX.R.CRIM EVID. 801(d). Moreover, the trial judge provided a verbal and written limiting instruction to the jury.

prejudicial effect of the evidence substantially outweighs its probative value. *See* TEX. R.CRIM.EVID. 403. All evidence is prejudicial to the opposing party to some extent. To prove error in its admission, appellant must show that the evidence was *unduly* prejudicial, and that its probative value is *substantially* outweighed by the danger of unfair prejudice. *See Montgomery,* 810 S.W.2d at 377–78. Rule 403 favors the admissibility of relevant evidence, "and the presumption is that relevant evidence will be more probative than prejudicial." *Id.* at 389. Thus, "trial courts should favor admission in close cases, in keeping with the presumption of admissibility of relevant evidence." *Id.*

■ Factors relevant to balancing the probative value of extraneous offenses include the similarity between the prior act and the offense charged, the closeness in time of the extraneous transaction to the charged offense, and the availability of alternative sources of proof. *See Robinson v. State,* 701 S.W.2d 895, 898 (Tex.Crim.App. 1985). In the present case, appellant's prior sexual assault of Darlene constituted violent conduct not caused by any provocation on her part and indicates the offense was not an isolated act of sudden passion. *See Sattiewhite v. State,* 786 S.W.2d 271, 285 (Tex.Crim. App.1989). The sexual assault occurred the day before the murder and was thus close in time to the offense charged. Absent evidence of appellant's prior assaultive conduct toward Darlene, the jury would have been deprived of important information concerning the nature of the couple's prior relationship. These factors, coupled with the court's limiting instruction to the jury, support the trial court's conclusion that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. *See Williams v. State,* 927 S.W.2d 752, 759 (Tex.App.—El Paso 1996, pet. ref'd). Point of error three is overruled.

The judgment of the trial court is affirmed.

EDELMAN, J., concurs in the result only.